IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIJAH R. WILLIAMS** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 23-CV-3945 |
| | : | |
| **ANTHONY CASO,** *et al.,* | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                      DECEMBER 16, 2024

On October 11, 2023, Elijah R. Williams filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging a violation of his Fourth Amendment rights. After granting Williams leave to proceed *in forma pauperis*, the Court directed service on Defendants Anthony Caso and B. Bonita Martin. (ECF Nos. 5, 11). Presently, before the Court are Motions by both Defendants to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 17, 32.) Williams has filed Responses to the Motions. (ECF Nos. 28, 37.) For the reasons set forth, Martin's Motion is granted, and Caso's Motion is denied.

**I.     FACTUAL ALLEGATIONS**[1]

Williams alleges that he was arrested on December 7, 2020, and transported to the Montgomery County Correctional Facility ("MCCF").[2] (Compl. at 12.) Among property taken

---

[1] The factual allegations set forth in this Memorandum are taken from Williams's Complaint (ECF No. 2). Unless otherwise cited, the Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[2] A review of public records confirms that Williams was arrested on December 7, 2020, by the Pottstown Police Department on firearms charges. *See Commonwealth v. Williams*, CP-46-CR-0000561-2021 (C.P. Montgomery). He entered a guilty plea to the charges on June 10, 2022, and was sentenced to a term of 11 to 23 months. *Id.*

from him when he was booked into MCCF were two Samsung Galaxy brand cell phones. (*Id*.) At some point, Williams appears to have been housed at the Bucks County Correctional Facility, from where he was released on June 15, 2022. (*Id*.) The next day, he went to MCCF to retrieve his belongings, but both of the cell phones were missing. (*Id*.) He was given a copy of a search warrant he had not before seen; he alleges that unknown detectives failed to give him a copy of the warrant or a property receipt for the phones at the time that the property was seized. (*Id*. at 12-13.) He also claims the affidavit used to procure the warrant failed to establish probable cause for the search and seizure of his phones. (*Id*. at 13.)

Williams alleges that, although Defendant Caso swore out the warrant on June 11, 2021, "he was not a party to the investigation which is the subject of the affidavit" and he had no firsthand knowledge about the investigation. (*Id*.) He claims that the warrant signed by a judge lists "criminal homicide" but the affidavit left blank the cause of death as well as the manner of death pending the police investigation, allegedly indicating the decedent's death had not been ruled a homicide. (*Id*. at 14.) He alleges that "the detectives failed to establish that there is probable cause to believe that a crime was committed." (*Id*.) Williams asserts that when Caso provided his affidavit "it was unclear if the decedent was a victim of suicide or homicide." (*Id*. at 15.) He notes also that the information about the death dated from nearly one year prior to when Caso provided his affidavit, making the information stale, and there was no information in the warrant application explaining why the "detectives waited . . . to seek a search warrant" or believed Williams would still have the same cell phone. (*Id*.) Williams claims that one phone was purchased four months after Mathis died, and the detectives failed to advance a reason why that phone would be relevant to their investigation. (*Id*. at 16.) He asserts that the gap in time shows bad faith by the detectives and that they failed to seek a warrant earlier because they lacked probable cause to obtain one.

(*Id*.) He alleges also that the detectives knew his phone number since they had called him during the investigation, but failed to list his phone number in the warrant application in order to specify the property to be seized. (*Id*. at 16-17.) He asserts also that the application specified Apple brand phones, while the phones seized from Williams at MCCF were Samsung Galaxy brand phones and the detectives failed to reapply for a warrant with the proper description of the property to be seized. (*Id*. at 17.) Williams asserts that the detectives' failure to document the unnamed informant's basis for his knowledge also rendered the warrant defective because the informant "was merely telling detectives what the word on the street was" and "merely gossiping," meaning that the warrant application was based on rumor. (*Id*. at 18-19.)

In Caso's affidavit, which Williams attached to his Complaint, Caso attested to information he received from the Hudson County, New Jersey prosecutors about their investigation of the Mathis death (*id*. at 22-26), including that the manner of death was pending the conclusion of the police investigation. (*Id*. at 22.) He attested, based on the prosecutor's information, that a friend of Mathis named "Pop" Samuel Martin received a text from Mathis telling him that he was with "Eli from Forrest and will text him when he is good," but he never heard from Mathis thereafter. (*Id*. at 24.) It was "Pop" who found Mathis dead in the car, observed a firearm next to him, took it, and passed the firearm to a friend whom he refused to identify to police. (*Id*. at 25.) Caso attested that prosecutors knew from a reliable source that Jalil Burns hired Elijah Williams – who was "Eli from Forrest" – to kill Mathis because Mathis refused to take responsibility for a gun charge involving Mathis and Burns. (*Id*. at 26.) Based on his own training, knowledge and experience, Caso attested that cell phones are capable of storing information and he had previously investigated crimes utilizing forensic evidence such as incoming and outgoing phone calls, text messages, emails and photos stored within a cell phone to locate evidence of crimes. (*Id*. at 27.)

He opined that those who commit crimes use cell phones to communicate with co-defendants or victims to commit their crimes. (*Id*. at 27-28.) He attested to his belief, based on the information provided by the Hudson County prosecutors, that Williams could have communicated with Mathis or Burns prior to Mathis's death, and the information could be stored within Williams's cell phones. (*Id*. at 28.) Based on the affidavit, a judicial officer in Montgomery County approved the warrant application. (*Id*. at 21.)

Williams also named as Defendants in his Complaint an unknown New Jersey prosecutor and an unknown Pennsylvania prosecutor/supervisor, alleging that both individuals conspired with the other defendants under color of state law. (*Id*. at 4 & 5; *id*. at 19 (alleging further that "before Jersey City detectives could seek a warrant, they needed the approval of a prosecutor in their office").) He asserted claims against all of the Defendants for violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (*Id*. at 4.) He also alleged that Caso conspired with the unknown New Jersey officials to violate his civil rights. (*Id*. at 5.)

On December 15, 2023, the Court directed service of Williams's Complaint upon Defendant Caso. (ECF No. 5.) In the service order, all official capacity claims were dismissed because they were deemed not plausible, and the Court noted that service could not be made upon any unidentified Defendant until such time as Williams provided sufficient identifying information. (*Id*.) Williams later identified the Unknown New Jersey Prosecutor as B. Bonita Martin.[3]

---

[3] Williams filed an Amended Complaint on March 28, 2024 (ECF No. 14.) In his submission, Williams asserted access-to-courts claims arising from his attempts to identify other actors who may have been involved in the allegedly illegal search and seizure. He sought to add as Defendants in this case an Unknown Detective Supervisor at the Montgomery County, Pennsylvania Detectives Bureau; Esther Suarez, the Hudson County, New Jersey Prosecutor; and Kevin R. Steele, the Montgomery County, Pennsylvania District Attorney. (ECF No. 14 at 2.) In a Memorandum and Order filed on April 12, 2024 (ECF Nos. 19, 20), the Court found that Williams's access-to-courts claims were not plausible. (*Id*.) Because Williams identified B. Bonita Martin as the Unknown New Jersey Prosecutor by returning a USM-

## II.  STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendant's burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff,

---

[2] 85 Form identifying Martin, (ECF No. 7), the Clerk of Court was directed to substitute Martin for the Unknown New Jersey Prosecutor.

and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) *abrogation on other grounds recognized in Fisher v. Hollingsworth*, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Anthony Caso

In his motion to dismiss, Caso argues that Williams's Complaint must be dismissed for several reasons. First, he assert that Williams's rights were not violated when he was not presented with the warrant at the time of the search because Caso satisfied the obligations of a Pennsylvania law enforcement officer in connection with the seizure of property pursuant to a search warrant. (ECF No. 17 (Caso Mem. in Support of Mot. to Dismiss) at 6.) Citing Pennsylvania Rule of Criminal Procedure 208(A), he argues it is "readily apparent from Plaintiff's allegations that a copy of the search warrant was left at MCCF, the premises from which Plaintiff's cell phones were taken, because as soon as Plaintiff attempted to reclaim his property from the facility, he obtained a copy of the warrant '[a]t that time.'"[4] (*Id*. at 6-7 (quoting Compl. at 3).) Caso asserts that there is no requirement that the property owner receive the warrant before the search is conducted, and

---

[4] Under that Pennsylvania Rule, a law enforcement officer "upon taking property pursuant to a search warrant, shall leave with the person from whom or from whose premises the property was taken a copy of the warrant and affidavit(s) in support thereof, and a receipt for the property seized." Pa. R. Crim. P. 208(A).

6

that he complied with the Rule's requirement by leaving the warrant at MCCF.  (*Id*. (citing *United States v. Wright*, 777 F.3d 635, 641 (3d Cir. 2015)).

Caso also argues that Williams's various allegations about defects in the warrant fail to state a plausible Fourth Amendment claim.  Specifically, he argues that

- the allegation that he lacked firsthand knowledge about the underlying crime is insufficient because he explicitly informed the issuing judicial authority that he attributed his knowledge of the investigation to members of the Jersey City police department and Hudson County Prosecutors Office, while asserting in his affidavit that his request to seize the cell phones was based on his own knowledge and experience about the type of information that law enforcement can glean from searching a cell phone when opining that the information was useful to the investigation (*id*. at 8-9);

- his seizure of Samsung phones when the warrant described Apple phones is insufficient to allege a cause of action because the brand of the phone was "plainly not material to the magistrate's probable cause determination," and his description of the type of information that could be gleaned from cell phones "does not turn on the brand of cell phone to be searched" (*id*. at 9-10 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) ("[F]alsehoods are deemed material to the finding of probable cause if the affidavit, with the false material set to one side[,] is insufficient to establish probable cause." (internal quotations and alterations omitted in original))).);

- his reliance in the affidavit on information that prosecutors received from an allegedly reliable source – namely that Burns hired Williams to murder Mathis because Mathis refused to take responsibility for a firearms charge pending against himself and Burns – is insufficient to support a plausible Fourth Amendment claim because, contrary to

7

    Williams's allegation that Caso was just reciting "word on the street" information, Caso disclosed to the judicial authority that other witnesses corroborated the hostility between the two men, criminal records corroborated the firearms charge against them, and Mathis's wife allegedly corroborated Mathis's unwillingness to admit to ownership of the gun at issue, and thus the affidavit contained ample information from which the judicial authority could have found probable cause for the seizure of Williams's cell phones based on the informant's information (*id*. at 10-11);

- Williams's assertion that a Fourth Amendment claim can be based on the allegation that the medical examiner had not yet ruled Mathis's death to be a homicide because the investigation was not complete "is unworkable and absurd," since delaying a decision on the cause and manner of death pending an investigation is an indication that it is probable a crime was committed, and his affidavit set forth an ample basis for the judicial authority to conclude that the cell phones contained evidence of a crime even though Mathis's death had not yet been ruled to be a homicide (*id*. at 12);

- the information in the affidavit was not "stale" because, although the age of information to support a warrant application can be a factor in determining probable cause, digitally stored data is not the type of evidence that dissipates or degrades, and there was a fair probability that evidence of Williams's communications still existed on the cell phones (*id*. at 12-13; Def. Reply (ECF No. 34) at 6));

- the failure to list Williams's cell phone number in the affidavit is insufficient to state a plausible claim since the requirement that the affidavit particularly describe the property to be searched only prevents police from undertaking a general, exploratory rummaging, and Williams fails to allege how the search, limited to his two cell phones to be found in

the property storage room at MCCF, falls within this prohibition since the description "drastically reduced the possibility that detectives would mistakenly search some other cell phone" (Caso Mem. at 13). Because Williams has alleged a plausible Fourth Amendment claim based solely on his allegation that the information used to obtain the warrant was stale, Caso's motion to dismiss is denied.

An officer who applies for a warrant, when it is clear that no probable cause for a search warrant exists, may be liable for damages under § 1983. *See Malley v. Briggs*, 475 U.S. 335, 341, 344 n.6 (1986). A search warrant is valid if: (1) a neutral and disinterested magistrate issues it; (2) those seeking the warrant demonstrate probable cause to the magistrate; and (3) the warrant particularly describes the "things to be seized" and "the place to be searched."[5] *See Dalia v. United States*, 441 U.S. 238, 255 (1979) (citations omitted). Thus, the analysis of Williams's § 1983 claim under the Fourth Amendment against Caso based on his involvement with procuring the search warrant begins with whether his rights were violated because Caso lacked probable cause to obtain the warrant. *Kitko v. Young*, 575 F. App'x 21, 24 (3d Cir. 2014) ("To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a constitutional right.") citing *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).

---

[5] As correctly argued by Caso, the United States Supreme Court has observed that the Fourth Amendment does not require "'the executing officer [to] present the property owner [here Williams] with a copy of the warrant before conducting his search.'" *Wright*, 777 F.3d at 641 (quoting *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006). This is because the Fourth Amendment "'protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, [before the search], the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, [after the search], a right to suppress evidence improperly obtained and a cause of action for damages.'" *Id*. (quoting *Grubbs*, 547 U.S. at 99). Thus, any assertion that Caso violated Williams's Fourth Amendment rights by failing to notify him at MCCF about the warrant at the time it was executed, rather than leaving the warrant at the facility for Williams to find later he if ever returned to reclaim his property, is not plausible.

"Probable cause for a search exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Kitko*, 575 F. App'x at 25 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Sherwood*, 113 F.3d at 401 (3d Cir. 1997) (same). "The Fourth Amendment provides that warrants must 'particularly describ[e] the place to be searched and the persons or things to be seized.'" *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (quoting U.S. Const. amend. IV). General warrants are invalid because they essentially authorize "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A warrant is not an invalid general warrant when "it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence." *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982) (finding a warrant authorizing seizure of all defendant's folders, checks, general ledgers, correspondence, and "all other documents, papers, instrumentalities and fruits of the crime" was sufficiently particular, because it limited the search to certain items, so "the magistrate, rather than the officer, determined what was to be seized."); *see also United States v. Carter*, 530 F. App'x 199, 203-04 (3d Cir. 2013) (agreeing that there was a substantial basis for the magistrate judge to find the affidavit supported probable cause to search defendant's computers even without the computer brand name and serial numbers, finding that the warrant described the seized computers with requisite particularity and the warrant did not authorize "a general exploratory rummaging").

In analyzing a § 1983 claim based on a lack of probable cause to obtain a warrant, the Court is "limited to ensuring that a magistrate had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause," confining the review "to the facts that were before the magistrate judge, *i.e.*, the affidavit," and ignoring "information from other portions of

10

the record." *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011) (footnote and internal citations omitted). "'Even if [we] would not have found probable cause in a particular case, [we] must nevertheless uphold a warrant so long as the issuing magistrate's determination was made consistent with the minimal substantial basis standard.'" *Kitko*, 575 F. App'x at 25 (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir.1993). Typically, "the existence of probable cause in a section 1983 action is a question of fact." *Sherwood*, 113 F.3d at 401 (reversing grant of summary judgment).

Because it is determinative of whether Williams has plausibly alleged the "lack of probable cause" element of his Fourth Amendment claim, the Court will focus on Williams's assertion that the information in the warrant was "stale" because law enforcement waited nearly one year to seek the warrant and thus violated the Fourth Amendment. It is well-settled that "probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued." *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973). "Age of the information supporting a warrant application is a factor in determining probable cause. . . . If too old, the information is stale, and probable cause may no longer exist. . . . Age alone, however, does not determine staleness. 'The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant.' Rather, we must also examine the nature of the crime and the type of evidence." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993) (quoting *United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir. 1990), other internal citations omitted); *see also United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (holding that if the information in an affidavit is too old, probable cause may no longer exist). For example, the age of information is less determinative where ongoing criminal activity is present. *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) (stating that within the context of ongoing

criminal activity, periods of weeks or even months between an act giving rise to probable cause and the warrant application do not necessarily render the information stale because "[w]hen an activity is of a protracted and continuous nature 'the passage of time becomes less significant[,]' and] . . . 'protracted and continuous activity is inherent in a large[-]scale narcotics operation.'" (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972).

The nature of the crime here was a possible criminal homicide and the type of evidence sought were two cell phones that might have recorded information about it, which were held in storage from December 7, 2020 to June 11, 2021 at a detention facility where Williams was held for an unrelated offense. While Caso argues that the information in the affidavit was not "stale" because digitally stored data is not the type of evidence that dissipates or degrades, and there was a fair probability that evidence of Williams's communications still existed on the cell phones, that argument does not explain the nearly one year lapse between when the Hudson County authorities identified Williams as possibly involved in the death of Mathis – July 12, 2020 when they allegedly learned information that Burns hired Williams to kill Mathis – and June 11, 2021, when Caso applied for the warrant. Nothing in Caso's affidavit discloses any additional information learned from the investigation during this period, or raises a possibility that criminal activity continued during this period. Nor does the Motion address Williams's allegation that at least one of the cell phones Caso sought to search was not yet purchased by Williams at the time of Mathis's death, a significant detail since Williams asserts that Caso did not include his phone number in the search warrant affidavit to more particularly describe the property to be seized. Because Williams has alleged facts to show plausibly that the information in the warrant application was stale when Caso presented it to a judicial officer, and the affidavit presented to the judicial officer did not hint at any continuing criminal activity in the intervening year, his allegation that Caso lacked probable

cause and violated his Fourth Amendment rights in procuring the warrant based on stale information is sufficient at this stage of the case to state a plausible claim and move this case beyond the pleadings stage. *See e.g.*, *Zimmerman*, 277 F.3d at 434 (10 months or so between the allegation and the warrant was stale); *United States v. Weber*, 923 F.2d 1338, 1340 (9th Cir. 1990) (twenty month interval made information stale); *compare also*, *Kitko v. Young*, No. 10-189, 2013 WL 5308016, at *12 (W.D. Pa. Sept. 20, 2013), *aff'd*, 575 F. App'x 21 (3d Cir. 2014) (stating that "while it is true that Walter was no longer using the cell phones registered to the Plaintiff's address in the months immediately preceding the procurement and execution of the search warrant, the protracted and continuous nature of the activity up until the time of the execution of the search warrant defeats Plaintiff's argument of staleness").[6]

### B.  Bonita Martin

Martin argues that Williams's claims against her should be dismissed because he failed to allege that Martin was personally involved in a violation of his Fourth Amendment rights. She asserts that, although Williams alleged several insufficiencies related to the search warrant, they only implicate those individuals who drafted, presented, and executed the warrant. (ECF No. 32 (Martin Mem.) at 6.) She argues that there are no allegations that she or anyone else at the Hudson County Prosecutor's Office drafted, presented, or executed the warrant. (*Id.*) Rather, the affidavit upon which the warrant was secured was authored and signed only by Defendant Caso and Martin is not named in the affidavit as having any role in it drafting or presenting it. (*Id.*)

Williams responds that detectives from the Hudson County Prosecutor's Office were involved in the investigation of the Mathis death and Martin cannot shield herself from liability

---

[6]  Because Williams has asserted a plausible Fourth Amendment violation based on this theory, it is not necessary to address his other theories.

"by claiming she was not the one who submitted the affidavit." (ECF No. 37 (Response) at 3 (citing *United States v. Yusef*, 461 F.3d 374, 388 (2006).) He asserts that he has satisfied his pleading burden because Martin "knows what the allegations are against her and has an ample opportunity to prepare [a] defense to the same." (*Id*. at 4.) He also asserts that, if the allegations against Martin are not sufficient, he should be permitted to file an amended complaint. (*Id*. at 4-5.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). William's allegations against Martin are insufficient to state a plausible claim because nowhere in his Complaint does Williams assert how Martin was personally involved in a violation of his Fourth Amendment rights. While he asserts that detectives from the Hudson County Prosecutor's Office were involved in the investigation of the Mathis death, this does not allege that Martin was involved in either that investigation, or in the drafting, presentment, or execution of the warrant. Accordingly, the claim against Martin must be dismissed.

The United States Court of Appeals for the Third Circuit has held that district courts should dismiss the claims of *pro se* litigants with leave to amend "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Cognizant of Williams's *pro se* status, the Court will grant, without prejudice, Martin's motion to dismiss, but also grant Williams an opportunity to

"flesh out his allegations [against Martin] by . . . explaining in [an] amended complaint the 'who, what, where, when and why' of [his] claim" against her. *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022); (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).

## IV.   CONCLUSION

For the reasons stated, Defendant Caso's motion to dismiss Williams's Complaint is denied.  Defendant Martin's motion to dismiss is granted, however, Williams may file an amended complaint if he is capable of providing additional factual allegations demonstrating that Martin was personally involved in a violation of his Fourth Amendment rights.  Should Williams decide to proceed *only* against Caso, he may notify the Court of that choice and the case will proceed beyond the pleadings stage against Caso only.  An appropriate Order will be entered separately, which provides further instruction regarding Williams's options for proceeding.

*NITZA I. QUIÑONES ALEJANDRO, J.*