IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIJAH R. WILLIAMS** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 23-CV-3945 |
| | : | |
| **ANTHONY CASO**, *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                     MARCH 26, 2025

In a Memorandum and Order filed December 16, 2024, this Court granted the motion filed by Defendant B. Bonita Martin and dismissed, without prejudice, the Amended Complaint filed against her by Plaintiff Elijah R. Williams with leave to Williams to file a second amended complaint. *Williams v. Caso*, No. 23-3945, 2024 WL 5126264 2024 (E.D. Pa. Dec. 16, 2024). A motion filed by Defendant William Caso was denied and Caso was directed to file an answer, which he did on January 13, 2025. (ECF No. 42.) Williams filed a Second Amended Complaint ("SAC") on January 20, 2025, (ECF No. 44), reasserting individual capacity claims against Caso and Martin, and also raising individual capacity claims against Defendants Kent Thornton, Esther Suarez, an Unknown Montgomery County Supervisor, an Unknown Montgomery County Detective, an Unknown Hudson County Detective, and an Unknown Hudson County Detective Supervisor/Prosecutor. He also included against Martin an official capacity claim. Martin filed a motion to dismiss the individual capacity claims asserted against her. (ECF No. 47.) Williams filed a Response and a Supplement (ECF Nos. 49, 51), and Martin has filed a Reply (ECF No. 54). For the reasons set forth, the motion, now ripe for review, is denied; and on statutory screening of the SAC, the claims against Defendants Thornton, Suarez, the unknown Defendants, and the official capacity claim against Martin are dismissed.

I.  **FACTUAL ALLEGATIONS**[1]

Williams alleges that he was arrested on December 7, 2020 and transported to the Montgomery County Correctional Facility ("MCCF").[2] (Am. Compl. at 4.) Among property taken from him when he was booked into MCCF were two Samsung Galaxy brand cell phones. (*Id*.) At some point, Williams appears to have been housed at the Bucks County Correctional Facility. After he was released on June 15, 2022, he went to MCCF to retrieve his belongings but both of the cell phones were missing. (*Id*. at 8.) He was given a copy of a search warrant he had not before seen that was supported by an affidavit signed by Defendant Caso and approved by a magistrate. (*Id*.) The affidavit indicated that the cell phones would be given to unnamed New Jersey detectives. (*Id*.) The warrant concerned a homicide investigation involving a decedent named Yusef Mathis in Hudson County, New Jersey. (*Id*. at 21.)

On December 19, 2023, Williams called the Hudson County Prosecutor's Office ("HCPO") and spoke to a non-defendant custodian of records, requesting the names of all detectives involved in applying for the search warrant. (*Id*. at 8.) That person refused to give him the information and told him to put his request in writing, which he did. (*Id*.) Williams also went to the Montgomery County Prosecutor's Office to ask for records, spoke with Caso, and was told that Bonita Martin of the HCPO Detective Bureau was the person who contacted him to obtain the search warrant. (*Id*. at 9.) He agreed to draft the paperwork for the warrant for the cell phones but told Martin she was "on her own" in getting records of Williams's jailhouse phone calls. (*Id*.) Caso let Williams

---

[1] The factual allegations set forth in this Memorandum are taken from Williams's SAC, (ECF No. 44). Unless otherwise cited, the Court adopts the sequential pagination assigned by the CM/ECF docketing system to all *pro se* filings.

[2] A review of public records confirms that Williams was arrested on December 7, 2020 by the Pottstown Police Department on firearms charges. *See Commonwealth v. Williams*, CP-46-CR-0000561-2021 (C.P. Montgomery). He entered a guilty plea to the charges on June 10, 2022 and was sentenced to a term of 11 to 23 months. *Id*.

know that his own supervisor had reviewed the warrant documents, but he would not name that person. (*Id*.) He received a response from the HCPO on January 16, 2024 declining to turn over the names he had requested. (*Id*.)

Williams asserts that he spoke with a "witness" named Keitt who told him that he was interrogated by HCPO detectives about the Mathis homicide before Williams's cell phones were confiscated. (*Id*.) Keitt told Williams that the detectives said the cell phones were in Jersey City at the time in question, that the cell phone belonging to an individual named Jalil Burns was not in the area at the time, and the detectives were trying to persuade him that Williams was guilty. (*Id*.) Keitt believed the HCPO already had Williams's cell phone data records. (*Id*.) Another witness was interviewed by the HCPO shortly after a body was discovered, who told detectives he heard a loud bang and saw a tall person exit the decedent's car. (*Id*. at 10.) A third witness named Pinkney told Williams he was interviewed about Williams after the remains were discovered, that the detectives were being accusatory toward Williams, and that Pinkney felt the need to defend Williams. (*Id*.) Pinkney was also asked about Williams's possible involvement in a homicide in Camden, New Jersey and was shown a photo of Williams from Facebook. (*Id*.)

Williams alleges that Caso had no firsthand knowledge of the New Jersey investigation and that Martin was the "true author" of the affidavit Caso submitted, even though her name is not mentioned. (*Id*. at 11.) He asserts that information Caso included in the warrant request, apparently provided by one or more of the New Jersey "Detectives," but that is not made clear in the SAC, was incorrect or misleading. (*Id*. at 12-13.) While he states that Caso prepared the warrant, he also alleges that "Detectives" failed to specify his cell phone number in the warrant, even though they were aware of the number, and they "deviated" from the scope of the warrant by obtaining Samsung Galaxy cell phones when the warrant specified Apple phones. (*Id*. at 14.) He also claims the warrant prepared by Caso failed to be specific about the information to be obtained,

3

which allowed the detectives to look at years' worth of private information. (*Id*.) He claims the detectives tried to make him look guilty when interviewing Keitt by sharing with him that the phone data placed Williams in the area. (*Id*. at 15.) He was never given notice or an inventory of any seized Facebook records. (*Id*.) He alleges that Martin submitted facts to "Caesar" – the name is unexplained but seems to be a mistyped version of "Caso" – knowing that probable cause was lacking, omitted other information, submitted facts with reckless disregard for the truth, and knew that information was stale (*Id*. at 16.) He claims Martin was aware of these insufficiencies and aware that the warrant specified Apple phones, and thus when she received Samsung Galaxy phones, knew that they were confiscated without a warrant. (*Id*.) He asserts that Defendant Kent Thornton is the only officer whose name is mentioned in Caso's affidavit and should have known that probable cause was lacking for the warrant, the unknown HCPO supervisor nonetheless approved it, and Esther Suarez as the head prosecutor in the HCPO failed to train subordinates. (*Id*.) He also mentions that a conviction in another case where Martin allegedly obtained cell phone records was overturned by an appellate court and alleges an official capacity claim against Martin on this basis. (*Id*. at 17.)

In Caso's affidavit, which Williams attached to his SAC, he attested to information about the investigation of the death of Yusef Mathis without specifying the specific source of the information he conveyed. (ECF No. 44-1 at 3-9). Caso attested that a friend of Mathis named "Pop" Samuel Martin received a text from Mathis telling him that he was with "Eli from Forrest and will text him when he is good," but he never heard from Mathis thereafter. (*Id*. at 5.) It was "Pop" who found Mathis dead in the car, observed a firearm next to him, took it, and passed the firearm to a friend whom he refused to identify to police. (*Id*. at 6.) Caso attested that unspecified detectives knew from a reliable source that Jalil Burns hired Elijah Williams – who was "Eli from Forrest" – to kill Mathis because Mathis refused to take responsibility for a gun charge involving

4

Mathis and Burns. (*Id*. at 7.) Based on his own training, knowledge and experience, Caso attested that cell phones are capable of storing information and he had previously investigated crimes utilizing forensic evidence such as incoming and outgoing phone calls, text messages, emails and photos stored within a cell phone to locate evidence of crimes. (*Id*. at 8.) He opined that those who commit crimes use cell phones to communicate with co-defendants or victims to commit their crimes. (*Id*. at 8-9.) He attested to his belief that Williams could have communicated with Mathis or Burns prior to Mathis's death, and the information could be stored within Williams's cell phones. (*Id*. at 9.) Based on the affidavit, a judicial officer in Montgomery County approved the warrant application. (*Id*. at 2.)

Based on his allegations, in addition to claims against Caso, Williams asserts constitutional claims against Martin, Thornton, Caso's unknown Montgomery County supervisor, and HCPO head prosecutor Esther Suarez in their individual capacities, as well as an official capacity claim against Martin.[3] He seeks injunctive relief in the form of an order compelling the Defendants to turn over any wiretap, consensual recording, or other electronic communications they may possess, and any inventory from the warrant. He also seeks the return of the two cell phones and money damages.

## II.    STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[A] 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

---

[3] Williams labels his claims against these Defendants as arising under the Fourteenth and First Amendments. (SAC at 15.) The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status to "apply the relevant legal principle even when the complaint has failed to name it." *Id.* Federal courts sometimes will thus ignore the legal label that a *pro se* litigant attaches to their pleadings. *Castro v. United States*, 540 U.S. 375, 381-82 (2003). Williams does not allege facts implicating a First Amendment right and his claims based on the defects he alleges in the warrant are properly understood to raise Fourth Amendment violations.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) *abrogation on other grounds recognized in Fisher v. Hollingsworth*, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se*

6

filings are construed liberally). The same standards apply to screening a complaint under 28 U.S.C. § 1915. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)).

## III.     DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend XIV. An officer who applies for a warrant, when it is clear that no probable cause for a search warrant exists, may be liable for damages under § 1983. *See Malley v. Briggs*, 475 U.S. 335, 341, 344 n.6 (1986). A search warrant is valid if: (1) a neutral and disinterested magistrate issues it; (2) those seeking the warrant demonstrate probable cause to the magistrate; and (3) the warrant particularly describes the "things to be seized" and "the place to be searched." *See Dalia v. United States*, 441 U.S. 238, 255 (1979) (citations omitted).

7

A. **Bonita Martin – Individual Capacity Claim**

Martin argues that the individual capacity claim asserted against her in the SAC should be dismissed because Williams has again failed to allege plausibly that she was personally involved in the drafting, presentation, and execution of the search warrant.[4] (ECF No. 47 (Martin Mem.) at 7.) She points out that the SAC focuses almost entirely on the actions of Defendant Caso concerning the drafting, presentation, and execution of the warrant and the only allegation concerning her was that she directed Caso to obtain the warrant. (*Id.*) She further contends that Williams fails to plead any facts to support his allegation that she was the "true author" of the affidavit or allege any wrongdoing by her as it relates to the affidavit or warrant. (*Id.*) Williams also failed to allege that Martin was involved in the underlying investigation, and his allegations that Martin supplied incomplete, misleading, or stale information are conclusory.[5] (*Id.* at 8.) She also contends that although he makes generalized allegations about HCPO officials, he alleges no specific acts about Martin's involvement. (*Id.*) He has, therefore, failed to meet his pleading burden to allege her personal involvement in a violation of his constitutional rights. (*Id.* (citing *Rode*, 845 F.2d at 1207).)

Williams responds that he has sufficiently alleged Martin's personal involvement since he asserted that Caso submitted the warrant application at her behest. (ECF No. 49 at 3.) He also alleged that Caso told him that Martin was the source of the information contained in the affidavit,

---

[4] Martin also asserts that the Court should strike the SAC because Williams submitted it five days beyond the time period the Court provided in the prior Order granting Williams thirty days to file the pleading. (Martin Mem. at 6.) Because Martin fails to allege she was prejudiced from the minor delay or justify how this delay is grounds for the extreme sanction of dismissal, this portion of her Motion is denied. (ECF No. 49 at 3.) Although Martin addresses only the individual capacity claim asserted against her, the Court will also screen the official capacity allegations.

[5] The Court previously rejected Defendant Caso's argument that the staleness allegation failed to allege a plausible claim.

even though the affidavit itself mentions only Defendant Thornton, and that Caso said Martin requested that he apply for the warrant for the cell phones.[6] (*Id.*) He argues that, from these allegations, it is reasonable to conclude that discovery will reveal evidence supporting his claims. (*Id.*)

The Court finds that Williams has alleged plausibly that Martin's actions violated his Fourth Amendment rights. He alleged that Caso submitted the warrant application at Martin's direction, that Caso himself took no part in the underlying investigation in New Jersey, and had no personal knowledge of the facts alleged in the affidavit, but was relying on information he was provided by Martin. While Martin argues that Williams's allegation that she was the true author of the affidavit is conclusory, her argument ignores these other allegations about her personal involvement in obtaining the warrant. Since she raises no other argument about why the Fourth Amendment claim is not plausible, the motion will be denied and she will be directed to file an answer to the SAC.

B. **Statutory Screening**

Because the Court has granted him leave to proceed *in forma pauperis*, Martin's claims in the SAC remain subject to statutory screening because 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim.. This includes his claims against Thornton, Caso's unknown Montgomery County supervisor, and HCPO head prosecutor Esther Suarez in their individual capacities, as well as an official capacity claim against Martin.[7]

---

[6] This argument supports the Court's supposition that the name "Caesar" in the SAC is a mistyped version of "Caso."

[7] Screening also applies to the Unknown Montgomery County Detective, Unknown Hudson County Detective, and Unknown Hudson County Detective Supervisor/Prosecutor that are listed in the caption of the SAC but not otherwise mentioned in the body of the pleading. Williams often makes allegations in the SAC against "Defendants," using the plural form of the word and not identifying any particular person to whom he refers. This is not sufficient to allege a plausible claim even against an unknown actor. Where there are multiple events and defendants at issue, alleging personal involvement

9

Williams names Thornton because he is "the only officer whose name is listed within the affidavit" and knew or should have known that probable cause was lacking and because he allegedly worked in tandem with Martin to procure the warrant. (SAC at 16.) In his description of events in the affidavit, Caso attests only that Thornton interviewed the decedent's wife. (*Id*. at 22.) Caso does not assert who gave him this information about Thornton's role in the investigation and, other than the conclusory assertion that Thornton worked in tandem with Martin, Williams fails to allege how Thornton was otherwise involved in procuring the warrant. The conclusory assertion, unsupported by any underlying allegations that Thornton was an officer who applied for the warrant directly or indirectly and knew that probable cause was lacking to obtain one, is insufficient to state a plausible claim that Thornton was personally involved in a violation of Williams's Fourth Amendment rights. Accordingly, the claims against Thornton will be dismissed.

Caso's unknown Montgomery County supervisor allegedly inspected his affidavit and approved its submission. (SAC at 9.) This allegation is insufficient to allege a § 1983 claim based on supervisory liability. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head

---

cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). Because there are no allegations specifying the actions of the unknown Defendants listed in the caption, they will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, to be plausible claims against supervisory-level officials must satisfy the general requirements for supervisory liability. *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Williams's sole allegation that Caso's supervisor approved the warrant application is akin to the type of implausible generalized allegations that courts reject and is insufficient to show the supervisor participated in or acquiesced in a violation of Williams's rights, established a policy with deliberate indifference to Williams's rights, or directed Caso to violate his rights. Accordingly, this Defendant will also be dismissed.

Applying this same criteria, the individual capacity Fourth Amendment claim against HCPO head prosecutor Esther Suarez is also not plausible since Williams essentially appears to

11

name her only because she is the person in charge of the HCPO.[8] He alleges only that, as the head prosecutor in the HCPO, Suarez failed to train subordinates. This allegation is wholly conclusory and Williams fails to allege any personal involvement by Suarez in the application for the warrant.

Finally, the official capacity claim against Martin will also be dismissed. An official capacity claim against a municipal or county-level official is indistinguishable from claims against the municipality or county itself.[9] *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* In order to allege a claim against a municipality or county, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Williams fails to allege that he suffered a constitutional violation due to a policy or custom of Hudson County. Accordingly, his official capacity claims against Martin are not plausible and must be dismissed.

---

[8] The Court previously denied Williams's attempt to supplement a prior version of his pleadings to add a First Amendment access-to-the-courts claim against Suarez. *See Williams v. Caso*, No. 23-3945, 2024 WL 1604014, at *3 (E.D. Pa. Apr. 12, 2024).

[9] The United States Court of Appeals for the Third Circuit has held that a prosecutor's office in New Jersey is not a separate entity from the county that can be sued under § 1983. *Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983."). Thus, an official capacity claim would be directed to Hudson County.

## IV.     CONCLUSION

For the reasons set forth, Defendant Bonita Martin's motion to dismiss the individual capacity claims asserted against her in Williams's SAC will be denied. On statutory screening Williams's official capacity claim against Defendant Martin, as well as all claims against Defendants Kent Thornton, Unknown Montgomery County Supervisor, Esther Suarez, Unknown Montgomery County Detective, Unknown Hudson County Detective, and Unknown Hudson County Detective Supervisor/Prosecutor will be dismissed. Having provided Williams with a prior opportunity to amend his pleadings, no further leave to amend will be granted at this time. However, if discovery reveals facts showing a plausible basis for asserting claims against other individuals, Williams make seek leave of the Court at that time to further amend his pleadings. An appropriate Order will be entered.

*NITZA I. QUIÑONES ALEJANDRO, J.*