## Continuation from Page 3, Section III. Paragraph C.

**3.** Among the personal property taken from Plaintiff and placed into storage at the Montgomery County Correctional Facility ("MCCF") were two Samsung Galaxy cellular telephones, both owned by Plaintiff.

**4.** Plaintiff was released from custody on June 15, 2022. On June 16, 2022, Plaintiff returned to MCCF to retrieve personal property that had been stored there since his December 2020 arrest.

**5.** Upon receiving his belongings, Plaintiff immediately discovered that both Samsung Galaxy cellular telephones were missing.

**6.** Plaintiff alerted the officer on duty, who initially stated that all property in MCCF's possession had been returned to Plaintiff.

**7.** Plaintiff requested to speak with a supervisor regarding the missing phones. The officer left but returned without a supervisor and instead presented Plaintiff with a document labeled "Search Warrant." (Caso affidavit) see exibit A

**8.** This was the first time Plaintiff was informed that his cellular telephones had been taken pursuant to a warrant.

**9.** After reviewing the purported search warrant and the accompanying affidavit of probable cause, Plaintiff determined that the affidavit had been sworn to by Detective Anthony Caso of the Montgomery County Detective Bureau.

**10.** The affidavit stated that Plaintiff's cellular telephones would be turned over to unnamed New Jersey law-enforcement personnel.

**11.** Plaintiff did not receive notice of the seizure or a copy of the warrant until June 16, 2022, approximately one year after the confiscation of his cellular telephones.

**12.** By the time Plaintiff learned of the seizure and the existence of the warrant, his cellular telephones had already been in law-enforcement custody for approximately one year.

**13.** Shortly after learning that his cellular telephones had been taken and retained pursuant to a warrant, Plaintiff experienced severe emotional distress.

**14.** On July 5, 2022, Plaintiff was civilly committed to Fairmount Behavioral Health.

**15.** On September 18, 2022, Plaintiff was later transferred to Norristown State Hospital, where he remained until becoming stable enough for release.

**16.** Following his release, Plaintiff was prescribed psychotropic medication and assigned a psychiatrist for monthly treatment and a therapist for biweekly treatment through Central Behavioral Health in Norristown, Pennsylvania.

**17.** During this same period, from approximately June 20, 2022, through February 15, 2023, Plaintiff experienced homelessness and was later approved for and placed on Supplemental Security Income ("SSI").

**18.** On October 12, 2023, Plaintiff commenced this action naming only Detective Anthony Caso, as Plaintiff did not yet know the identities of the other Pennsylvania defendants or the unnamed New Jersey authorities to whom Plaintiff's property had been turned over.

**19.** On December 19, 2023, Plaintiff contacted the Hudson County Prosecutor's Office and spoke with the custodian of records in an attempt to identify the New Jersey defendants who were in possession of his property.

**20.** On December 23, 2023, Plaintiff sent a handwritten letter to the Hudson County Prosecutor's Office, and on December 26, 2023, Plaintiff sent an email to the same office, both in further attempts to identify the New Jersey defendants involved.

**21.** Also on December 26, 2023, Plaintiff traveled in person to the Montgomery County Prosecutor's Office and attempted to identify not only the Hudson County Prosecutor's Office defendants, but also any individuals within the Commonwealth of Pennsylvania who were involved in the seizure of his property other than Detective Anthony Caso.

**22.** Aside from a conversation Plaintiff had with Detective Anthony Caso on December 26, 2023, Plaintiff was unable to obtain identifying information concerning other Pennsylvania or New Jersey defendants involved in the seizure or retention of his property. During that conversation, Detective Caso provided Plaintiff with the name Bonita Martin.

**23.** On April 13, 2024, Plaintiff traveled to Jersey City, New Jersey, and spoke with a witness, Kimshaun Keitt, who stated that he had been interviewed by detectives from the Hudson County Prosecutor's Office regarding the underlying matter sometime around February or March of 2021.

**24.** Mr. Keitt explained that detectives told him that Plaintiff's cellular phone was "in the area" on the night or day in question. Mr. Keitt further stated that detectives told him that another individual's cellular phone was not in the area at that time.

**25.** Mr. Keitt stated that he believed the detectives were attempting to persuade him that Plaintiff was guilty. He further stated that he believed the detectives had access to Plaintiff's cellular phone data because they were aware of specific times at which Plaintiff had contacted him.

**26.** On the same date, Plaintiff also spoke with another witness, Jermaine Pinkney. Mr. Pinkney stated that he had been summoned to the Hudson County Prosecutor's Office shortly after the decedent's remains were discovered and was questioned by detectives as a potential source of information.

**27.** Mr. Pinkney explained that he did not know the identity of the victim prior to the interview and had no information regarding suspects or details of the case. He further stated that, during the interview, detectives questioned him extensively about Plaintiff and about Plaintiff's potential involvement.

**28.** Mr. Pinkney further stated that detectives told him that Plaintiff was involved in an unrelated homicide that had occurred in Camden, New Jersey, in 2016, and that Mr. Pinkney had no knowledge of any such involvement.

**29.** Mr. Pinkney also stated that detectives showed him photographs of Plaintiff and that he believed the detectives' questioning and conduct were accusatory in nature.

**30.** In July 2025, pursuant to discovery requests in this action, Plaintiff received an affidavit authored by Bonita Martin (Martin Affidavit #1), see Exhibit B, that had been relied upon by Detective Anthony Caso in drafting his own affidavit in support of the warrant to seize Plaintiff's cellular telephones.

**31.** During the summary judgment stage of this action, Plaintiff became aware of an additional affidavit authored by Defendant Bonita Martin (Martin Affidavit #2), which apparently had been inadvertently uploaded as an exhibit to her motion for summary judgment.

**32.** Through discovery in this action, Plaintiff also learned of the existence of additional warrants that had been applied for in or around June 2020.

**33.** As of the present time, Plaintiff has not received notice of those warrants or an opportunity to be heard regarding them.

## Anthony Caso – Individual Capacity

34. Defendant Caso further failed to ensure timely service of the search warrant. As a result, Plaintiff did not receive a copy of the warrant until approximately June 16, 2022—nearly one year after the seizure—thereby depriving Plaintiff of any meaningful opportunity to timely challenge either the seizure itself or the underlying warrant.

35. This delay foreclosed Plaintiff's ability to seek suppression or return of his property through Pennsylvania state court procedures. Had Plaintiff received timely notice of the warrant, he could have sought relief pursuant to Pennsylvania Rule of Criminal Procedure 588(A). By the time notice was finally provided, Plaintiff had already suffered a prolonged and unjustified interference with his possessory and privacy interests.

36. The affidavit submitted in support of the search warrant was constitutionally defective and failed to establish probable cause under the Fourth Amendment and corresponding provisions of the New Jersey and Pennsylvania Constitutions. The warrant application relied on unsupported assertions, stale information, uncorroborated informant statements, and material omissions that prevented a neutral magistrate from making an independent determination of probable cause.

37. Defendant Caso's affidavit improperly credited information attributed to an unnamed and unknown confidential source. Rather than providing the magistrate with facts permitting an independent assessment of reliability, the affidavit merely asserted—without support—that the confidential source was "reliable." The affidavit failed to describe any prior instances in which the informant had provided accurate information to law-enforcement authorities, and it failed to set forth the informant's basis of knowledge concerning the alleged events.

38. Both constitutional prongs governing the use of confidential informants were thus deficient. First, the affidavit did not establish veracity or reliability through past performance or corroboration. Second, it failed to establish any meaningful basis of knowledge. Merely repeating statements already attributed to other witnesses does not constitute firsthand knowledge of criminal activity and provides no insight into how the informant allegedly obtained the information.

39. When the government seeks to rely on information from a non-present, non-testifying, unnamed, and faceless informant, the Fourth Amendment requires a showing sufficient to allow a neutral magistrate to independently evaluate credibility and reliability. Defendant Caso's affidavit failed to satisfy these constitutional requirements, rendering reliance on the confidential source improper and further undermining any finding of probable cause.

40. Defendant Caso submitted the warrant application at the direction of Detective Bonita Martin of the Hudson County Prosecutor's Office. Defendant Caso did not participate in the underlying investigation, lacked personal knowledge of the asserted facts, and failed to independently verify the information included in the affidavit. The application therefore presented a sworn affidavit from an officer without firsthand knowledge, undermining the constitutional requirement that probable cause be supported by an oath or affirmation grounded in actual knowledge.

41. The informant claims incorporated into the warrant application constituted layered hearsay—rumors relayed through multiple intermediaries and later incorporated into an affidavit long after the fact—which was insufficient to establish probable cause under the Fourth Amendment.

42. Detective Caso knowingly omitted the fact that no cellular telephones were recovered from the decedent's vehicle when it was located by law enforcement. This fact is expressly contained in Detective Bonita Martin's affidavit, which notes that although the decedent's wife advised detectives that the decedent possessed two cellular phones, neither phone was found in the vehicle. Detective Caso excluded this information from his own affidavit despite knowing that the absence of any phones in the car directly undermined the prosecution's theory that the decedent had recently texted his friend stating, "I'm with Eli."

43. This omission was material. Had the issuing judge been informed that no phones were recovered from the decedent's vehicle—despite the assertion that the decedent possessed two phones—it would have raised serious doubt as to whether the alleged text message was ever sent, whether it originated from the decedent at all, and whether any phone associated with the Plaintiff had a legitimate nexus to the alleged events. Defendant Caso's failure to disclose this information deprived the magistrate of the ability to make a fully informed probable-cause determination.

44. Defendant Caso further omitted critical credibility-undermining facts concerning witness Samuel Martin, also known as "Pop." As documented in Detective Bonita Martin's affidavit, Mr. Martin became uncooperative after requesting to speak off camera, refused to continue cooperating with police, interfered with the investigation, opened doors of the vehicle, removed a firearm from the car, and engaged in conduct consistent with potential evidence tampering. These facts bore directly on his reliability as the sole source of the claim that the decedent texted him shortly before death, yet Defendant Caso deliberately excluded them from his affidavit.

45. The omission of these facts was particularly significant given the unexplained absence of the decedent's cellular phones. With no phones recovered from the vehicle and a key witness whose conduct raised serious credibility concerns, the possibility that evidence was removed, altered, or misattributed could not be ruled out. Defendant Caso's affidavit concealed these uncertainties and presented the alleged text message as reliable while omitting facts that cast substantial doubt on whether the message ever existed.

46. Defendant Caso also omitted the fact that the decedent's sister contacted the Plaintiff by telephone while physically present in the police interview room and actively speaking with detectives. As reflected in Detective Bonita Martin's affidavit, the sister later provided detectives with screenshots and contact information confirming Plaintiff's active phone number at the relevant time.

47. By withholding the Plaintiff's known phone number from the issuing judge, Defendant Caso strategically obscured the scope of the warrant. Had the magistrate been provided with Plaintiff's specific phone number, there would have been no justification to authorize the seizure and search of multiple phones. This deliberate omission enabled Defendant Caso to seek authorization for two phones without establishing individualized probable cause for each, resulting in an overbroad and constitutionally defective warrant.

48. Taken together, these omissions were not negligent or inadvertent but reflected a deliberate or reckless disregard for the truth. Defendant Caso selectively excluded facts that undermined probable cause, inflated witness credibility, concealed uncertainty regarding the alleged text message, and obscured the known identity of Plaintiff's phone, thereby creating a misleading narrative that would not have survived judicial scrutiny had the omitted facts been disclosed.

49. The warrant expressly described two Apple iPhones, yet detectives seized two Samsung Galaxy phones instead. At least one of those devices was purchased months after the decedent's passing and could not reasonably have contained evidence related to the alleged offense.

Detectives neither sought nor obtained a subsequent warrant authorizing the seizure of the Samsung devices, rendering the confiscation a warrantless seizure in violation of the Fourth Amendment.

50. The decedent passed away in June 2020, and the information relied upon by detectives was generated within days of that event. Detectives nevertheless waited until June 2021—nearly one year later—to apply for the warrant, rendering any alleged phone-related probable cause stale and constitutionally deficient.

51. Although Defendants now advance several post-hoc theories attempting to explain why the information supporting the warrant was allegedly not stale, none of those arguments, facts, or rationales appear within the four corners of the warrant affidavit. No statement, explanation, or scintilla of evidence addressing staleness was presented to the magistrate at the time probable cause was assessed. Because these after-the-fact justifications were not before the magistrate, they cannot be considered in evaluating the validity of the warrant. As a result, the magistrate lacked constitutionally sufficient information to find probable cause, and the warrant was facially invalid under the Fourth Amendment.

## Bonita Martin — Individual Capacity

**52.** Defendant **Bonita Martin**, at all relevant times a detective with the Hudson County Prosecutor's Office, acted under color of state law and was a direct, knowing, and substantial participant in the investigation, procurement of warrants, and post-seizure concealment of unconstitutional searches and seizures targeting Plaintiff's cellular telephones and electronic data.

**53.** Martin exercised primary investigative authority over the New Jersey investigation and authored, supplied, curated, and controlled the factual narrative used to obtain judicial authorization to search for and seize Plaintiff's phones. Although another officer formally swore to the affidavit, Martin knowingly used a proxy affiant while retaining substantive control over the warrant application, its contents, and its omissions.

**54.** At the time Martin directed and caused the warrant application to be submitted, she knew—or at minimum recklessly disregarded—that the information she supplied failed to establish probable cause. The affidavit relied on stale and speculative information, unreliable witnesses, internally inconsistent assertions, and conclusory boilerplate, and it failed to establish a particularized nexus between Plaintiff's cellular phone and any specific criminal conduct.

**55.** The affidavit Martin caused to be submitted relied on a purported "reliable source" or confidential informant who, in reality, was merely repeating unverified street gossip rather than providing firsthand or contemporaneous information. Martin has admitted that this individual was stating only what he had "heard on the street." Presenting rumor as reliable intelligence constituted reckless disregard for the truth and rendered the affidavit constitutionally deficient.

**56.** Martin deliberately omitted material eyewitness information establishing that a witness observed a **tall individual** exiting the decedent's vehicle on the night in question, despite knowing that Plaintiff is approximately **5'2"** in height. This omission was critical to the magistrate's probable-cause assessment and directly undermined any inference that Plaintiff was the individual observed.

**57.** Martin further manufactured a misleading investigative timeline by repeatedly asserting that no one heard from the decedent after **9:05 p.m.**, because that time allegedly placed the decedent with Plaintiff. Martin omitted the fact that the decedent spoke with his wife via FaceTime approximately **twenty minutes later**, during which he appeared calm, alone, and not in distress. These omitted facts contradicted the affidavit's central narrative and were material to the probable-cause determination.

**58.** Martin possessed all information she claimed supported probable cause by **July 2020**, yet she waited until approximately **June 2021**—nearly a year later—to pursue a warrant. The affidavit contained no facts from which a neutral magistrate could conclude that Plaintiff still possessed the same phone at the time of the application, rendering the information stale under settled Fourth Amendment principles.

**59.** Prior to seeking the physical-seizure warrant, Martin applied for and obtained a **Communications Data Warrant** directed to Plaintiff's carrier, T-Mobile. Through that process, Martin received or had access to Plaintiff's phone identifiers, including make, model, color, IMEI, and phone number. Martin, therefore, knew that Plaintiff possessed a **Samsung Galaxy Note 10** during the relevant period.

**60.** Despite this knowledge, Martin caused the warrant application to seek authorization to seize **two Apple iPhones**, a material misrepresentation that rendered the warrant facially defective. Martin further knew or should have known that at least one device ultimately seized and searched was purchased approximately **four months after** the decedent's passing and could not, as a matter of logic or fact, contain evidence of the alleged offense.

**61.** In order to cause Defendant **Anthony Caso** to apply for and execute the warrant authorizing the seizure of Plaintiff's cellular telephones, Martin first prepared and supplied a sworn affidavit for use in the Pennsylvania warrant application. That sworn affidavit, authored and controlled by Martin, deliberately omitted material exculpatory facts and affirmatively created false and misleading impressions. These omissions and misrepresentations are confirmed by discovery and by inconsistencies between Martin's initial sworn affidavit and a subsequent affidavit she authored and submitted in New Jersey to obtain authorization to search the same phones. Martin's use of materially different sworn narratives to justify the same seizures demonstrates reckless disregard for the truth and a knowing effort to procure judicial authorization through deception.

**62.** The affidavit submitted by Martin to justify the search of Plaintiff's cellular telephones was independently unconstitutional in scope. In that affidavit, Martin sought authority to search **any and all stored or observed data**, including but not limited to call logs, contacts, emails, text messages, instant

messages, photographs, videos, internet browsing history, Wi-Fi and internet protocol data, address and location data, and deleted data. Martin provided no facts establishing a particularized nexus between any of these expansive data categories and the alleged offense. Instead, the affidavit authorized an unfettered exploratory search, permitting law enforcement to rummage through the entirety of Plaintiff's most personal digital information in violation of the Fourth Amendment's prohibition on general warrants and its particularity requirement.

63. Martin's subsequent sworn affidavit, submitted in New Jersey to obtain authorization to search the same cellular telephones, omitted critical facts bearing on the existence of probable cause itself. Specifically, Martin failed to disclose that the medical examiner had **not yet determined the cause or manner of the decedent's death** at the time of the application. This omission concealed from the issuing magistrate that it had not been established whether any crime had occurred at all—information essential to a neutral determination of probable cause and materially undermining the justification for intrusive electronic searches.

64. Martin's second sworn affidavit also contained deliberate falsehoods designed to manipulate the investigative timeline. In that affidavit, Martin represented that **LaTanya Mathis**, the decedent's wife, stated she last spoke with her husband at approximately **5:00 p.m. via FaceTime**, and that the decedent later sent a text message at approximately **9:38 p.m.** However, in the sworn affidavit Martin previously supplied to Defendant Caso, Martin stated that the decedent **FaceTimed his wife at approximately 9:25 p.m.**—a materially different and later time. By altering the time of the FaceTime call, Martin attempted to create an artificial gap suggesting that the decedent was with Plaintiff during the relevant period. Martin further omitted that during this FaceTime conversation the decedent appeared **alone, calm, and not in distress**, and made no mention of being with Plaintiff or of any threatening or ominous circumstances. These facts directly contradicted the narrative that the decedent was with Plaintiff during a critical window of time and constitute knowing falsification or reckless disregard for the truth.

65. Martin's second affidavit also falsely asserted that detectives had obtained and analyzed Plaintiff **Elijah Williams's** cellular telephone records associated with the phone number **201-238-1439**, and that those records allegedly showed communications with the number **551-285-6964**, purportedly used by **Jaleel Burns a/k/a "Big Ben."** Plaintiff has never used, possessed, or been associated with the number **201-238-1439**, has never recognized it as his own, and has no knowledge of how law enforcement attributed that number to him. Upon information and belief, Martin fabricated or misattributed this phone number to falsely suggest a digital connection between Plaintiff and an alternative suspect, further misleading the magistrate.

66. The absence of a nexus between Plaintiff's cellular telephone and any alleged criminal activity is further underscored by conclusory boilerplate contained in Martin's second affidavit stating that persons involved in criminal activity commonly use telephones. This unsupported generalization, unaccompanied by case-specific facts, training credentials, or investigative findings, cannot substitute

for individualized probable cause and would justify searching virtually any person's phone in any investigation.

**67.** The temporal scope requested in Martin's second affidavit further illustrates its lack of particularity and nexus. Although the affidavit sought certain records extending **two months after** the incident, Martin simultaneously requested undefined **historical information** without specifying any temporal boundary, asserting only that such data would permit "relational and pattern analysis." This open-ended request authorized limitless retrospective access to Plaintiff's digital life and independently violated the Fourth Amendment.

**68.** Martin further relied heavily on statements attributed to **Samuel Martin ("Pop")**, despite knowing that he was unreliable and enmeshed in the criminal milieu. Samuel Martin was among the first individuals to encounter the decedent, removed a firearm from the vehicle, and was present while others admitted to manipulating the scene. Martin knew that Samuel Martin later became uncooperative and refused to continue his interview on camera.

**69.** Despite the foregoing, Martin deliberately omitted additional facts bearing directly on Samuel Martin's credibility and motive, including their estrangement since **January 2020**, contradictory statements from **Sakina Lovelace**, statements to family members that the decedent killed himself, and an incoming call from **"Big Ben."** The record remains barren of any effort by law enforcement to corroborate Samuel Martin's account through objective investigative means.

**70.** Beyond the initial seizure warrant, Martin applied for and obtained additional forms of electronic surveillance, including Communications Data Warrants for Plaintiff's historical and real-time location information, access to social-media data, consensual recordings, forensic extractions, and potentially jailhouse call logs and recordings.

**71.** Martin refused to provide Plaintiff with notice, inventories, docket numbers, or copies of the warrants authorizing these searches and seizures. By conditioning disclosure on the filing of criminal charges, Martin deprived Plaintiff of any meaningful opportunity to challenge the legality of the searches or seek judicial review.

**72.** Through these acts and omissions, Martin violated Plaintiff's clearly established rights under the **Fourth Amendment**, the **Fourteenth Amendment**, and the **First Amendment**.

**73.** Martin's conduct was deliberate and objectively unreasonable and demonstrates a pattern and practice of manipulating warrant procedures to obtain access to digital data while evading judicial accountability.

## Kent Thornton — Individual Capacity

74. Defendant Detective **Kent Thornton** acted in concert with Defendant **Bonita Martin** in the investigation, drafting, and procurement of an unconstitutional warrant affidavit.

75. As part of that investigation, Defendant Thornton personally interviewed the decedent's wife, **Latonia Mathis**, and reported that Ms. Mathis stated she spoke with the decedent at approximately **9:25 p.m. via FaceTime video call**.

76. Defendant Thornton knowingly omitted critical exculpatory facts from the affidavit, including that Ms. Mathis reported the decedent **appeared alone**, **unbothered**, and **not distressed**, and that she **did not observe anyone else with him** during the video call.

77. These omissions were material because the affidavit repeatedly advanced a misleading and ominous narrative that the decedent was last heard from at approximately **9:05 p.m.**, when he sent a text message stating, *"I'm with Eli,"* suggesting imminent danger.

78. The omitted FaceTime call occurred approximately **twenty minutes later**, directly contradicting that narrative and demonstrating that the decedent was alive, calm, and not in the presence of the plaintiff or anyone else.

79. Defendant Thornton further omitted the fact that immediately following the FaceTime call, Ms. Mathis texted the decedent and he responded back without delay, again making no mention of the plaintiff, showing no signs of distress, and giving no indication of any imminent danger.

80. Defendant Thornton's deliberate omissions were made knowingly and/or with reckless disregard for the truth, were intended to bolster probable cause that otherwise did not exist, and directly contributed to the issuance of an unconstitutional warrant.

## Leonard Rinaldi — Individual Capacity

81) Defendant **Leonardo V. Rinaldi**, Deputy Chief Prosecutor of the Hudson County Prosecutor's Office, exercised direct supervisory authority over Defendant **Detective Bonita Martin** at all relevant times.

82) On June 11, 2021, Defendant Rinaldi transmitted the affidavit authored by Defendant Bonita Martin to **Lieutenant Todd Richard** of the Montgomery County Detective Bureau for the purpose of obtaining a warrant to seize the plaintiff's cellular phone(s). By doing so, Defendant Rinaldi directly participated in the procurement of the warrant that is the subject of this action.

**83)** Defendant Rinaldi sent the affidavit authored by Defendant Martin to the Montgomery County Detective Bureau, **knowing** that it failed to establish probable cause and **knowing** that it contained material misstatements and omissions.

At all relevant times, Defendant Rinaldi acted in an **investigatory capacity**, not as an advocate engaged in courtroom functions. Accordingly, the protections of **absolute prosecutorial immunity are inapplicable**, and Defendant Rinaldi is entitled at most to qualified immunity.

**84)** By virtue of his direct supervisory authority over Defendant Martin, Defendant Rinaldi **knew or should have known** the following:

**A.** That the Communications Data Warrant ("CDW") obtained by detectives in or about June 2020 demonstrated that the plaintiff owned and operated **a single cellular phone**, specifically a *Samsung Galaxy Note 10*, yet the affidavit authored by Defendant Martin improperly sought authorization to search for and seize two **Apple iPhones**.

**B.** That the information relied upon in the affidavit was **stale**.

**C.** That the confidential informant cited in the affidavit expressly stated that his information was **based on rumor** and that he possessed **no firsthand knowledge** of any criminal activity.

**D.** Critically, that the affidavit authored by Defendant Martin provided **no factual nexus** between the plaintiff's cellular phone and any alleged criminal activity. The affidavit relied solely on boilerplate "training and experience" language, which is legally insufficient under both New Jersey and federal law. Courts have repeatedly held that generalized assertions—without specific facts linking a particular device to criminal conduct—cannot establish probable cause. See *State v. Boone*, 232 N.J. 417 (2018); *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017).

**E.** That the warrant was **unconstitutionally overbroad**, as it imposed **no temporal limitation** and **no data-type limitation** on the information authorized to be extracted from the plaintiff's cellular phone. The warrant effectively authorized a general search of the plaintiff's digital life, permitting unfettered access to private communications, location data, photographs, internet activity, and application data without regard to relevance or time frame, in violation of clearly established Fourth Amendment protections.

**F.** That Defendant Rinaldi was kept fully apprised of the warrant-procurement process by Defendant Lieutenant Richard, who transmitted emails informing Defendant Rinaldi that the application for the search warrant had been approved by the Montgomery County First District Attorney and would shortly be submitted to a magistrate for approval, with confiscation of the plaintiff's cellular phone(s) expected to occur later that same day.

## Todd Richard — Individual Capacity

85) On June 11, 2021, Defendant **Lieutenant Todd Richard** of the Montgomery County Detective Bureau received the affidavit authored by Defendant Bonita Martin from the Hudson County Prosecutor's Office and **personally turned it over to Defendant Anthony Caso** so that Defendant Caso could apply for a search warrant. In doing so, Defendant Richard directed that the affidavit be rewritten in Defendant Caso's own words for submission to a magistrate. Defendant Richard did not merely supervise this process—he **affirmatively participated** in the warrant's procurement.

86) Defendant Richard, as a lieutenant, exercised **direct supervisory authority** over Defendant **Detective Anthony Caso**.

87) Defendant Richard:

**A.** Oversaw the transformation of the affidavit from Defendant Martin's version into Defendant Caso's version. Defendant Richard permitted Defendant Caso to largely **copy and paste** Defendant Martin's affidavit and submit it under his own name. While Defendant Caso rephrased certain portions and expanded on his "training and experience," every substantive allegation contained in his affidavit originated in Defendant Martin's affidavit. Both affidavits equally failed to provide any factual nexus connecting the plaintiff's cellular phone to criminal activity and instead relied on boilerplate language in violation of the Fourth Amendment.

**B.** Acted as an intermediary between jurisdictions by receiving the affidavit from Hudson County authorities, permitting it to be reformulated under Defendant Caso's name, and then notifying Hudson County officials that the affidavit had been approved by the Montgomery County District Attorney's Office and that the plaintiff's phones would be seized.

**C.** Knew or observed that Defendant Caso made **material omissions** of key facts that were present in Defendant Martin's original affidavit.

**D.** Further affirmatively participated in the execution of the warrant by taking part in, and overseeing, the **scheduling and coordination of the transfer of the plaintiff's seized cellular phone(s)** from Montgomery County authorities back to Defendant Bonita Martin in Hudson County. Defendant Richard was not a passive supervisor: he was the same official who received the warrant affidavit from Hudson County and then **orchestrated the transfer of the seized devices back to Hudson County**, thereby completing the inter-jurisdictional seizure and transfer process.

88) Defendant Richard had both the **authority and the duty** to prevent submission of the affidavit to a magistrate, yet knowingly allowed the affidavit to proceed despite its clear constitutional deficiencies.

**89)** Pennsylvania courts and federal courts, including the Third Circuit, have consistently held that boilerplate references to an officer's "training and experience" cannot substitute for a factual nexus establishing probable cause to search a cellular phone. Under Pennsylvania law, a warrant affidavit must articulate specific facts linking the device to criminal activity. *Commonwealth v. Johnson*, 240 A.3d 575, 584–85 (Pa. 2020). The Third Circuit likewise requires a concrete connection between the place to be searched and the evidence sought, rejecting conclusory or generalized assertions. *United States v. Stearn*, 597 F.3d 540, 559–60 (3d Cir. 2010); *United States v. Zimmerman*, 277 F.3d 426, 433–34 (3d Cir. 2002). Federal courts have specifically rejected reliance on "training and experience" alone to justify cellular phone searches. *United States v. Griffith*, 867 F.3d 1265, 1273–74 (D.C. Cir. 2017). Where, as here, an affidavit contains no factual allegation that the plaintiff possessed, used, or communicated via a cellular phone in connection with any criminal conduct, the resulting warrant violates the Fourth Amendment.

## Edward McCann – Individual Capacity

**90)** Defendant **Edward McCann, Jr.,** First Assistant District Attorney, was tasked with reviewing the affidavit of probable cause authored by Detective Anthony Caso and determining whether it should be approved or rejected based upon the existence of probable cause.

**91)** Defendant McCann approved the affidavit despite its failure to establish a sufficient **nexus** between the Plaintiff's cellular phone(s) and any alleged criminal activity.

**92)** Defendant McCann further approved the warrant application despite the information contained therein being **stale** at the time of submission.

**93)** Defendant McCann did nothing more than **rubber-stamp** an affidavit that clearly lacked probable cause.

**94)** Defendant McCann knew or should have known that the cellular phones seized from Plaintiff's property were **Samsung Galaxy devices**, not Apple iPhones, yet he failed to direct officers to seek a corrected or particularized warrant specifying the actual devices seized.

**95)** Defendant McCann also knew or should have known that Detective Caso made **material omissions** in his affidavit when compared to the affidavit authored by Defendant Bonita Martin, omissions that were critical to the probable-cause determination.

**96)** Defendant McCann is sued in his **individual capacity** for actions taken in an **investigatory and supervisory role**, not as an advocate in judicial proceedings, and therefore is not entitled to absolute prosecutorial immunity.

**97)** Defendant McCann was aware that Detective Caso's affidavit relied on **boilerplate "training and experience" language** rather than specific facts establishing a nexus between Plaintiff's phone and criminal activity, a practice that is unlawful under Pennsylvania law.

## Defendant Wayne Mello in His Official Capacity

**98.** Defendant **Wayne Mello** was, at all relevant times, the Hudson County Prosecutor and the chief law-enforcement officer for Hudson County, New Jersey. In that capacity, Defendant Mello exercised final supervisory and enforcement authority over all assistant prosecutors, detectives, analysts, and investigative personnel employed by or acting under the authority of the Hudson County Prosecutor's Office. Defendant Mello was responsible for establishing, implementing, enforcing, and maintaining the policies, practices, and customs governing electronic surveillance, warrant applications, notice, warrant returns, data retention, and post-seizure disclosure within Hudson County.

**99.** Defendant Mello is sued **in his official capacity only** for purposes of **prospective declaratory and injunctive relief** pursuant to *Ex parte Young,* 209 U.S. 123 (1908).

**100.** Plaintiff is suffering an ongoing violation of federal constitutional rights arising from Hudson County policies and practices that permit covert investigative techniques—including Communications Data Warrants, acquisition of cell-site location information, consensual audio recordings, digital forensic extractions of cellular phones, and access to social-media data—without constitutionally adequate notice, warrant returns, docket disclosures, or any meaningful mechanism for an uncharged individual to obtain judicial review.

**101.** As a result of these policies and practices, Plaintiff's private data has been seized, retained, used, and potentially disseminated, while Plaintiff has been affirmatively denied notice of the warrants, issuing courts, docket numbers, scopes, durations, and results of the surveillance. These deprivations are ongoing and continue to violate Plaintiff's rights under the **First, Fourth, and Fourteenth Amendments**.

**102.** Defendant Mello possesses the authority to require disclosure of warrants and returns, to implement constitutionally sufficient notice procedures, to prohibit retention and use of unlawfully obtained data, and to ensure access to judicial review. Plaintiff's ongoing injuries are directly traceable to Defendant Mello's continued enforcement and maintenance of the challenged policies and customs, including the refusal to require disclosure of docket numbers, warrants, returns, and the identities of officials involved.

**103.** Plaintiff does not seek damages from Defendant Mello or the State of New Jersey. Plaintiff seeks only prospective relief to halt ongoing constitutional violations. Accordingly, the claims against Defendant Mello fall squarely within the *Ex parte Young* exception to Eleventh Amendment immunity.

**104.** Defendant **Bonita Martin** has repeatedly represented that the docket numbers, warrant returns, inventories, and related surveillance records sought by Plaintiff were **not within her custody or control**, and instead were maintained by the **Hudson County Prosecutor's Office**. These representations directly implicate Defendant Mello, as the final supervisory and enforcement authority responsible for the possession, concealment, and continued withholding of those materials.

**105.** The continued refusal to disclose this information has foreclosed Plaintiff's ability to petition the courts, move to suppress or unseal, or otherwise challenge the legality of the surveillance, despite the ongoing possession and use of Plaintiff's data by state authorities.

**106.** The policies and practices enforced by Defendant Mello include the enforcement of New Jersey's electronic-surveillance statutes, including the **New Jersey Wiretap and Electronic Surveillance Control Act**, **N.J.S.A. 2A:156A-1 et seq.**, which authorize covert electronic surveillance while permitting delayed or entirely withheld notice to the subject of that surveillance. See, e.g., **N.J.S.A. 2A:156A-16** and **N.J.S.A. 2A:156A-24**.

**107.** As written and as applied, the New Jersey Wiretap Act authorizes government officials to conduct secret electronic surveillance without post-surveillance notice, without disclosure of warrants, docket numbers, or returns, and without any meaningful opportunity for an uncharged individual to obtain judicial review, thereby insulating such searches from accountability.

**108.** These provisions have been applied directly to Plaintiff. More than **five years** have elapsed since the surveillance techniques at issue were used against Plaintiff, yet Plaintiff has still never received notice of any wiretap orders, communications data warrants, consensual interceptions, docket numbers, warrant returns, or judicial authorizations.

**109.** As a result of the statute's secrecy provisions and Defendants' reliance on those provisions, Plaintiff has been deprived, for years, of any meaningful opportunity to challenge the surveillance, seek judicial review, or obtain redress. This prolonged denial of notice constitutes an ongoing constitutional injury, not a past harm.

**110.** Absent declaratory and injunctive relief, Plaintiff will remain unable to challenge the legality of the surveillance or obtain access to the courts, while Defendant Mello continues to enforce policies and practices that permit covert surveillance without notice or meaningful judicial oversight.

**111.** Plaintiff seeks prospective declaratory and injunctive relief ordering Defendant Mello, in his official capacity, to disclose the existence of all warrants and orders authorizing surveillance of Plaintiff, provide constitutionally adequate notice and inventories, and cease enforcing policies and practices that deny notice and judicial review in violation of the United States Constitution.

## COUNT [X] — CONSPIRACY TO DEPRIVE CIVIL RIGHTS

**(42 U.S.C. § 1983)**

112. Defendants **Kent Thornton, Bonita Martin, Anthony Caso, Todd Richard, Edward McCann, and Leonardo Rinaldi**, acting under color of state law, knowingly reached an agreement and understanding to deprive Plaintiff of rights secured by the **Fourth and Fourteenth Amendments** to the United States Constitution.

113. In furtherance of the conspiracy, Defendants jointly participated in and coordinated the **preparation, supervision, approval, transmission, and reliance upon warrant affidavits** that they knew, or recklessly disregarded, failed to establish **probable cause** and lacked a **sufficient nexus** between Plaintiff's cellular telephones and any alleged criminal activity.

114. Despite knowing that the affidavits were legally deficient, Defendants approved, advanced, relied upon, and caused those affidavits to be submitted to judicial officers for the purpose of obtaining authority to **unlawfully seize Plaintiff's electronic devices**.

115. Each Defendant was aware of the actions of the other co-conspirators, knowingly acquiesced in the unconstitutional conduct, and **took overt acts in furtherance of the joint scheme**, including investigative coordination, supervisory approval, and inter-agency transmission of defective warrant materials.

116. As a **direct and proximate result** of Defendants' conspiracy, Plaintiff suffered the unconstitutional seizure and examination of his cellular telephones, the deprivation of due process, and other concrete and ongoing injuries.

117. Defendants' actions were **intentional, knowing, or undertaken with reckless disregard for the truth**, and violated clearly established constitutional rights, entitling Plaintiff to **compensatory damages, punitive damages, declaratory relief, injunctive relief**, and attorneys' fees pursuant to **42 U.S.C. § 1988**.

## DAMAGES

As a direct and proximate result of Defendants' unconstitutional acts and omissions, including but not limited to the illegal search and seizure of Plaintiff's person, property, and communications data, and the subsequent misuse and disclosure of information obtained therefrom, Plaintiff has suffered and continues to suffer the following damages:

## A. Compensatory Damages

118. **Invasion of Privacy and Dignitary Harm**
Plaintiff suffered a substantial invasion of his reasonable expectation of privacy, loss of confidentiality, and dignitary harm arising from Defendants' unlawful intrusion into highly personal digital information, including communications data protected by court order.

119. **Emotional Distress and Mental Anguish**

Plaintiff experienced emotional distress, anxiety, humiliation, stress, and mental anguish as a result of the unconstitutional search, seizure, and disclosure of protected information, including fear and distress caused by the unauthorized dissemination of such information to third parties.

120. **Economic and Financial Losses**

Plaintiff sustained economic damages, including but not limited to lost income, lost business opportunities, interference with contractual and prospective economic relationships, loss of productivity, and out-of-pocket expenses incurred in responding to and mitigating the effects of Defendants' unlawful conduct.

121. **Loss of Use and Property-Related Damages**

Plaintiff suffered damages resulting from the deprivation and loss of use of his personal property and digital data, including cell phones and stored information, as well as costs associated with data loss, data recovery, and disruption to personal and professional affairs.

122. **Reputational Harm**

Plaintiff suffered reputational injury and damage to personal and professional relationships as a direct result of Defendants' unauthorized disclosure of information obtained through the illegal search, including disclosures made in violation of a court sealing order.

## B. Nominal Damages

123. **Nominal Damages**

Even if the full extent of Plaintiff's damages cannot be precisely quantified, Plaintiff is entitled to nominal damages for each violation of his constitutional rights under the Fourth and Fourteenth Amendments.

## C. Punitive Damages (Against Individual Defendants)

124. **Punitive Damages**

Plaintiff seeks punitive damages against Defendants sued in their individual capacities, as their conduct was malicious, reckless, and/or demonstrated a callous and deliberate indifference to Plaintiff's clearly established constitutional rights, including knowingly exceeding lawful authority and disclosing sealed information to unauthorized private parties.

## D. Declaratory and Injunctive Relief

125. **Declaratory Relief**

Plaintiff seeks a declaration that Defendants' actions and omissions violated his rights under the United States Constitution.

126. **Injunctive Relief**

Plaintiff seeks injunctive relief prohibiting further dissemination or use of unlawfully obtained

information, and requiring the return, destruction, or expungement of data obtained in violation of his constitutional rights.

## E. Attorney's Fees and Costs

127.    **Attorney's Fees and Costs**

Plaintiff seeks recovery of reasonable attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and other applicable provisions of law.

## F. Reservation of Rights

128.    **Continuing and Future Damages**

Plaintiff reserves the right to seek additional damages proven at trial, including continuing and future damages resulting from Defendants' unconstitutional conduct.